MELISSA HOLYOAK, First Assistant United States Attorney (#9832)
JOEY BLANCH, Assistant United States Attorney (# 16665)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801)524-5682

_____

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW ROSS BLODGETT,<br><br>Defendant. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br><br>Case No. 2:26-cr-00103 |

☐     The United States is not seeking detention.

☐     Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast track program, which includes agreeing to detention for the pendency of this case.

☒     The United States moves for detention based on current information.  The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence.  The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention.  The United States' motion for detention is:

☒  Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

    ☒  **(A)** a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of

10 years or more is prescribed; **or**

☐ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☒ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

**OR**

☐ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☐ **(A)** a serious risk the defendant will flee; **or**
☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

### Procedure

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days.  18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained.  *Id*.  The rules concerning the admissibility of evidence do not apply at the detention hearing.  *Id*.  The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

**Rebuttable Presumption**

☒ A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption.  The United States acknowledges that it retains the burden of persuasion.  The statutory presumption applies:

  ☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

   **(A)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

   **(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; *and*

   **(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

  ☒ Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

   ☐ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

   ☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

   ☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

   ☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

   ☒ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

**Factors to Be Considered**

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

☒ The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).

☒ The weight of evidence against the defendant. (18 U.S.C. § 3142(g)(2)).

☒ The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings. (18 U.S.C. § 3142(g)(3)(A)).

☐ Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. (18 U.S.C. § 3142(g)(3)(B)).

☒ The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release. (18 U.S.C. § 3142(g)(4)).

☐ The defendant's lack of legal status in the United States. The defendant's legal status is: There is an order of removal pending against him.

☐ How the defendant would be subject to removal or deportation after serving a period of incarceration.

☐ The defendant's significant family or other ties outside of the United States.

☐ The defendant's use of aliases or false documents.

☐ The defendant's prior attempts to evade law enforcement.

☐ How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☐ The defendant's prior failures to appear for court proceedings.

☒ Other reasons including:

On December 30, 2025, defendant used social media to reach out to a 13-yo girl online. In fact, the girl was an undercover officer as a 13-yo girl (the UC). When defendant contacted the UC, he was immediately informed that the UC was only "13." Defendant told the UC that he was 22 and he had thought she could have been 18 lol. But then he made it clear he was just fine with her being 13. He said "I'm in [West Valley City] just saying if age doesn't matter to you but lmk tho." The UC asked defendant if he was okay with her age; his only concern was getting caught. Specifically, he said, "I'm not but like if your fr [for real] lowkey and respectful by being cautious and careful so I don't get into trouble we're

cool".

During the conversation, defendant suggested they meet in person that same night, to "hang out." However, defendant made it clear by "hang out," he meant have sex.  The UC asked defendant what they would do, and defendant responded, "we'll have fun then ik it could you just spend a whole night then?" UC asked what kind of fun and then told him again that if he was not comfortable with her age, then he could unadd her and it was okay. Defendant responded, "I just wanna love you is that okay." The UC asked defendant what he  meant by "love [her];" defendant responded, "make love to you." The UC clarified again -  "o like sex?" Defendant responded in the affirmative - "Mhm."  Later, defendant asked the UC if she was a virgin, and wanted to know about her past experience with sex, how she liked it, if she ever "got your ass played with," "are you good at throat," "do you like giving head."  He told her that he would give her a great experience and that he'll show her his "cock."  He also assured her that he would have condoms. Defendant suggested they could to "do this a lot" if they "don't run into any problems for the first couple meets."

Defendant also made it clear that his primary concern with the fact that the UC was only 13 was getting caught.  For instance, he wanted to make sure her phone didn't have tracking or anything else on it that would get him in trouble.   "Can you not be tracked or anything if you were to come to my place?" and "Just saying don't want anyone tryna come find you here if I would to let you come." He also wanted proof so that he knew she was "for real" and not a "set up."  He told her that her phone had to be off while she's at his house so no one could find her active location.   To ensure she was not law enforcement, he also insisted that before they meet, she engage in activity that a police officer would not do.   "We gotta do a couple things tho so ik your frfr [for real for real] and no a set up or nothing tho if that's fair." First he asked for a video chat to "see her body" and show her his, and asked if she could do that right now. When the UC was uncertain, he explained that if she showed him her body, he could know she was not law enforcement.  "I can know your not a cop if you do is why I ask plus I'm gonna love what I see no matter what."  When the UC declined, defendant sked if she was even trying to have sex in the first place, stating, "and like are you eve ntryna have sex in the first place mb [my bad]."  The UC responded that they weren't a cop and that they could have sex but that she did not know him.  Defendant then asked the UC to send a "live snap of either your pussy or tits either or so I can 100%" and then promised not to save it.

Defendant and the UC made plans to meet up that night.  Defendant continued to take steps to ensure he could not be identified and arrested.  For instance, he told her his name was Jace – his name is actually Andrew.  He wanted her to travel to him, but did not want to give her his address.  He suggested they meet church near his home then walk back to his house.  He also asked for non-sexual photos of her to make sure that she didn't look so young his dad would realize she was only 13.  "I just wanna make sure my dad won't suspect your age to be so young tk."  He also requested a phone call. A call was made between the defendant and adult woman employed by law enforcement to engage in these undercover conversations because she looks and sounds like a minor. The conversation was primarily about the logistics of getting the UC to defendant's house, but defendant also asked she was comfortable having sex.

Ultimately, they agreed to meet at a mall then take a ride-share back to defendant's house.  That evening, defendant told the UC that he was heading to the mall.   He told her he was by the bathrooms in the back of the food court, and mentioned a particular restaurant.  Law enforcement set up surveillance at that restaurant, then the UC told defendant that she was there.  Defendant had told the UC he was 6'3'' and thin.  At this point, they saw a tall, slender male - the defendant - wearing a black jacket and a mask, make a loop through the courtyard adjacent to the restaurant, appearing to look into the restaurant to see who was there.  At this point, the UC made a series of voice calls to the defendant to see if the man they were watching reached for his phone to try to answer; he did.  Surveillance watched the defendant walk

away from the restaurant and sit at a bench in another part of the mall.  The UC then received a text from defendant telling her to meet him at that part of the mall and that he would be wearing a black jacket.

Defendant was arrested.  During a search incident to arrest, defendant was found to be armed with a 9mm handgun and an additional magazine.  He was also carrying two THC cartridges.

Post-Miranda, D admitted that he was the person communicating with the UC, stating that he was "lonely" and "that was the reason for his bad decisions."   He did claim that he wasn't sure she was actually 13 or that they would actually have had sex.

There is no question that defendant is the person communicating with a 13 year old girl for sex.  He very clearly understood that the UC was only 13.  He nevertheless made plans to meet with her that very same evening.  He also clearly understood that having sex with her was illegal and he could get into trouble – the specter of serious consequences did not deter him, it just made him more cagey, engaging in behavior to ensure he could have sex with a minor without getting caught.  He asked her for pictures of her genitals and to live video chat and show him her body.  He would not tell her his true name or address and demanded she turn off her phone, so any adult looking for her would find she had simply disappeared.  And he showed up to the meeting armed.  Nothing in defendant's behavior suggests that any conditions or combination of conditions of release would make him safe in the community, and he should be detained.


☐   The victim(s) in this matter seek(s) a no contact order.


☒   This matter does not involve a victim requiring notification; the case involved an undercover officer.

DATED this 20th day of April, 2026.

MELISSA HOLYOAK
FIRST ASSISTANT UNITED STATES ATTORNEY


 _/S/ Joey Blanch_____
JOEY L. BLANCH
Assistant United States Attorney